UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JASON BENDA, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:22 CV 167 ACL |
| ) | |
| SADLER RENTALS, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiffs Jason Benda and Dr. Yuan Yuan Xie brought this discrimination and breach of contract action against Defendants Sadler Rentals, LLC, and Timothy Sadler. Presently before the Court is Defendants' Motion for Summary Judgment. (Doc. 31.) The matter is fully briefed and ready for disposition.

**I.      Background**

Plaintiffs Jason Benda and Dr. Yuan Yuan Xie ("Bendas") are husband and wife and residents of Cape Girardeau County, Missouri. Dr. Xie was born in China, immigrated to the United States, and is of Chinese ethnic descent. Defendant Timothy Sadler is the managing member of Sadler Rentals, a Missouri limited liability company doing business and owning property in Cape Girardeau County, Missouri. Mr. Sadler is Caucasian.

The Bendas are the owners of real property located in Jackson, Missouri, where they reside ("Benda Residence"). Sadler Rentals previously owned real property located at 550 E. Deerwood Drive in Jackson, Missouri ("Deerwood Lot"). The Deerwood Lot is an undeveloped lot that is directly adjacent to the Benda Residence on one side, and adjacent to a lot containing a

1

duplex owned by Sadler Rentals and occupied by Mr. Sadler's parents on the other side. This action arises from the Bendas' attempt to purchase the Deerwood Lot from Sadler Rentals. When Mr. Sadler was unwilling to negotiate with Mr. Benda for the purchase of the lot, Mr. Benda used a Caucasian "straw purchaser" to enter into an agreement with Mr. Sadler for the purchase of the lot at a price of $100,000. Mr. Sadler refused to close on the sale of the property when he discovered the Bendas were providing the funds for the purchase. After subsequent negotiations, the Bendas ultimately purchased the Deerwood Lot from Defendants at a price of $130,000.

Plaintiffs' Complaint alleges two counts. First, Plaintiffs assert a race discrimination claim in violation of 42 U.S.C. § 1981. Plaintiffs claim that Defendants discriminated against the Bendas on the basis of Dr. Xie's race and ethnicity in that they initially refused to close on the sale of the Deerwood Lot when they discovered the Bendas were the purchasers, and they then required the Bendas to pay $30,000 more than a prospective Caucasian buyer.

Plaintiffs next allege that Sadler Rentals breached the contract for the sale of the Deerwood Lot by causing materials to be dumped on the Deerwood Lot after the execution of the contract and prior to closing, and then refusing to remove the discarded concrete from the Deerwood Lot prior to closing.

Defendants filed a Motion to Dismiss, in which they argued that the Complaint should be dismissed for failure to state a claim upon which relief can be granted, because the allegations fail to satisfy minimum pleading requirements. (Doc. 6.) The Court denied the Motion, finding Plaintiffs had alleged sufficient facts to state claims plausible on their face. The Court noted that whether Plaintiffs could establish the requisite but-for causation for their discrimination claim

2

would be determined after evidence had been presented.  (Doc. 10.)

In the instant Motion for Summary Judgment, Defendants argue that Plaintiffs' racial discrimination claim fails because Plaintiffs have no evidence that Mr. Sadler ever knew of Dr. Xie's ethnicity and neither Plaintiff testified as to any evidence of an intent to discriminate by Defendants.  Defendants contend that they are entitled to summary judgment on Plaintiffs' breach of contract claim because Plaintiffs have produced no evidence of a breach of contract or damages relating to a breach of contract.

Plaintiffs respond that there is "at best, a fact dispute" concerning whether Mr. Sadler knew that Dr. Xie is a member of a protected class.  (Doc. 34 at p. 6.)  Plaintiffs argue that they have established an intent to discriminate by Defendants in that Defendants would not sell the Deerwood Lot to them for the same price as they agreed to sell to a similarly situated buyer who is Caucasian.  Plaintiffs argue that the evidence demonstrates that Defendants breached a provision of the sales contract requiring Defendants to keep the property "in the same order and condition," by cutting trees and vegetation and dumping concrete debris on the lot prior to closing.

## II.    Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving part[ies]." *Anderson v. Liberty Lobby,*

3

*Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the burden of showing a lack of a genuine dispute as to any material fact, *Celotex Corp.*, 477 U.S. at 323, and the Court views the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986).  To survive a motion for summary judgment, the nonmoving party must substantiate her allegations with "sufficient probative evidence that would permit a finding in her favor based on more than mere speculation, conjecture, or fantasy."  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (quotation omitted).

**III.    Facts**[1]

Plaintiff Jason Benda's first encounter with Mr. Sadler occurred over the telephone in late 2021 or early 2022.  Mr. Benda had observed construction workers at the Deerwood Lot and asked them what they were doing and who owned the property.  The workers informed Mr. Benda that Mr. Sadler owned the lot.  Mr. Benda asked the construction worker for Mr. Sadler's phone number.  Mr. Benda then called Mr. Sadler to inquire about his plans for the Deerwood Lot and express his interest in purchasing the lot.  Mr. Benda complained that Mr. Sadler was rude to him and would not sell the property to him.

In April or May of 2022, Travis Smith, a neighbor of the Bendas, approached Mr. Benda requesting an easement on the Bendas' property to allow Mr. Smith to construct a swimming pool.  Mr. Smith is Caucasian.  In July 2022, the Bendas and Travis Smith entered into an agreement whereby Mr. Smith would attempt to enter into a contract for the purchase of the Deerwood Lot as a straw purchaser for the Bendas.  In exchange, the Bendas would grant an

---

[1]The Court's recitation of the facts is taken from the parties' statements of uncontroverted facts, their responses thereto, and the exhibits filed by the parties.

easement on their property to allow Mr. Smith to construct his swimming pool. Mr. Smith reached an agreement with Sadler Rentals to purchase the Deerwood Lot at the price of $100,000. The parties coordinated with a title company to close the transaction and Mr. Sadler provided his wire instructions for the purchase price. Immediately prior to closing, Mr. Sadler learned that the Bendas were supplying the purchase price and revoked the offer to sell the property for $100,000. Mr. Benda accused Defendants of racial discrimination, and the parties thereafter ceased communications.

On September 30, 2022, weeks following Defendants' revocation of the offer, Mr. Benda again engaged Mr. Sadler and the parties negotiated and signed a contract for the sale of the Deerwood Lot in the amount of $130,000.

After the contract was signed and prior to the closing of the sale, Mr. Benda informed his counsel that he had observed Mr. Sadler and others removing trees and other vegetation on the Deerwood Lot and dumping concrete residue on the property. On October 18, 2022, the Bendas' counsel wrote to Defendants' counsel to request confirmation of the removal of the concrete debris. Defendants' counsel responded later that day that the debris would be removed prior to closing.

The parties closed on the sale of the Deerwood Lot on October 21, 2022. Plaintiffs initiated this action on December 12, 2022.

### IV.     Discussion

As previously stated, Defendants argue they are entitled to judgment as a matter of law on both of Plaintiffs' claims. The undersigned will discuss these claims in turn.

### 1. Racial Discrimination (Count I)

In relevant part, § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a).  In this context, "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  This right to contract is "protected against impairment by nongovernmental discrimination...." 42 U.S.C. § 1981(c).

The Supreme Court has long "construed [§ 1981] to forbid all 'racial' discrimination in the making of private as well as public contracts." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987).  "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).  "Any claim brought under § 1981 ... must initially identify an impaired 'contractual relationship' ... under which the plaintiff has rights."  *Id.*

Defendants argue, and Plaintiffs do not dispute, that Plaintiffs have no direct evidence of discrimination, thus they must prove intentional discrimination under the *McDonnell Douglas* burden-shifting framework.  *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015); *see Davis v. KARK-TV, Inc.*, 421 F.3d 699, 703 (8th Cir. 2005) (holding § 1981 claims are analyzed in the same manner as Title VII claims).  Under that framework, Plaintiffs must first establish a prima facie case.  *Huynh v. U.S. Dep't of Transp.*, 794 F.3d 952, 958 (8th Cir. 2015).

6

If they do, then the burden shifts to Defendants to offer legitimate, non-discriminatory reasons for their actions. *Id.* If Defendants can establish a legitimate, non-discriminatory reason for doing so, the burden shifts back to Plaintiffs to prove Defendants' reasons were a pretext for discrimination. *Id.*

To state a prima facie case of discrimination under § 1981, a plaintiff must establish (1) he or she is a member of a protected group; (2) the defendant intended to discriminate against him or her on the basis of race; and (3) the discrimination concerned an area enumerated by the statute. *Williams v. Lindenwood Univ.*, 288 F.3d 349, 355 (8th Cir. 2002) (quoting 42 U.S.C. § 1981(b)). Under § 1981, a plaintiff bears the burden of showing race was a but-for cause of his or her injuries. *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1014-15 (2020).

Here, there is no dispute that Plaintiff Dr. Xie is a member of a protected group. Plaintiffs, however, have failed to produce any evidence of intentional racial discrimination to state a prima facie case of discrimination under § 1981.

First, there is no probative evidence that Mr. Sadler and Dr. Xie ever met or that Defendants even knew Dr. Xie's ethnicity at the time they began negotiating the sale of the Deerwood Lot. Mr. Sadler testified that he first learned of Dr. Xie's race when Mr. Benda accused him of racial discrimination in a September 13, 2022 email. (Doc. 35-7 at p. 20.) Although Mr. Benda claims that he and Dr. Xie introduced themselves to Mr. Sadler and his parents when they were walking in the neighborhood in the winter or spring of 2022, Dr. Xie testified that she had only seen Mr. Sadler "from a distance," and had never met him. (Doc. 33-

7

3.) Dr. Xie stated that she had no direct information that would suggest that Mr. Sadler knew her ethnicity; she only knew what her husband had told her. *Id.* at 15.

In support of his claim that Mr. Sadler knew of Dr. Xie's ethnicity prior to the real estate negotiations, Mr. Benda cites to the following facts: Mr. Sadler and the Bendas have mutual acquaintances; and the Bendas have resided in a home next to Mr. Sadler's parents' residence since August 2021. Mr. Benda testified that it is "not unusual for people to talk about other people. So Tim [Sadler] knows well—for example, Jane Clark knew my wife, knew she was Asian, so on and so forth. It's—it's very likely that Tim found out." (Doc. 35-1 at p. 9-10.) He stated that one of the "strongest reasons" why he believed Mr. Sadler's actions were racially motivated was because within hours of Mr. Benda stating in an email to Mr. Sadler that "there is an element of racial discrimination here," he saw Mr. Sadler chopping down trees on the Deerwood Lot. *Id.* at p. 10.

Mr. Benda's own self-serving statements amount to pure speculation, and do not show that Defendants knew Dr. Xie's ethnicity at the time Mr. Sadler and Mr. Benda engaged in negotiations.

Plaintiffs claim that they have shown Defendants' intent to discriminate by the fact that Defendants would not sell the Deerwood Lot to the Bendas for the same price as they agreed to sell to a similarly situated buyer who is Caucasian. Plaintiffs allege that the "only distinction between the purchasers in these transactions was the race and ethnicity of the buyer." (Doc. 34 at 6.) Plaintiffs omit a crucial fact that transpired between the time Mr. Sadler accepted Mr. Smith's offer to purchase the property at the price of $100,000 and his subsequent unwillingness to sell the property to Mr. Benda at this price: Mr. Sadler became aware that Mr. Benda

8

concealed his identity and attempted to use Mr. Smith as a straw purchaser.  Because of this distinction, Mr. Smith and Mr. Benda are not similarly situated.

Even if Plaintiffs could establish a prima facie case, Plaintiffs are unable to show Defendants' reason for selling the property to Plaintiffs for a higher price was merely pretext.  Under the *McDonnell-Douglas* burden-shifting framework, Defendants have the burden to "articulate a non-discriminatory, legitimate justification for its conduct which rebuts [Plaintiffs'] prima facie case."  *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 954 (8th Cir. 2012).  "This burden is not onerous." *Id.*

Defendants' stated justification for revoking their offer to sell the Deerwood Lot for $100,000 is that Mr. Sadler discovered Plaintiffs "were conspiring to deceive Sadler as to who was purchasing the subject real property."  (Doc. 37 at p. 1.)  Plaintiffs admit that they entered into an agreement with Mr. Smith to act as a straw purchaser.  This serves as a non-discriminatory, legitimate justification for revoking the original offer.  The burden now shifts back to Plaintiffs to show pretext.

Plaintiffs provide no evidence of their assertion that Defendants' explanation for revoking their offer was pretext.  Instead, Plaintiffs argue that Defendants' explanation is "belied by Defendants' later negotiations with the Bendas, and ultimate agreement to sell the property, albeit at a 30% price increase." (Doc. 34 at p. 7.)  Plaintiffs' argument is unpersuasive and does not demonstrate pretext.  It is undisputed that Mr. Sadler was angry when he found out about the straw purchase and that Mr. Benda leveled accusations of racial discrimination against Mr. Sadler.  Mr. Sadler ceased communications with the Bendas at this time.  A few weeks later, it was *Mr. Benda* who reached out to Mr. Sadler to resume negotiations.  Mr. Sadler's actions,

9

including agreeing to sell the property only at a higher price, are entirely consistent with his stated explanation of feeling deceived by Mr. Benda's efforts to conceal his identity and being offended by being accused of racist behavior.

In sum, the record is devoid of any evidence which would support Plaintiffs' claims that Defendants intended to discriminate against Plaintiffs in the sale of the Deerwood Lot on the basis of Dr. Xie's race. Plaintiffs presented no evidence that Defendants knew Dr. Xie's race at the time they were negotiating or that Defendants ever met Dr. Xie. They do not allege that Defendants ever made any racially motivated remarks directed at Plaintiffs or anyone else. Conclusory allegations of race discrimination without a minimal factual showing are insufficient to raise a genuine issue exists as to any material fact. The record clearly reveals animus between Mr. Sadler and Mr. Benda; but there is no evidence to support that this animus was motivated in any way by race. Thus, summary judgment will be granted in favor of Defendants on Count I of Plaintiffs' Complaint.

### 2. Breach of Contract (Count II)

In Count II of the Complaint, Plaintiffs allege a state law breach of contract claim based on Mr. Sadler's alleged cutting and dumping trees and concrete residue on the Deerwood Lot after the agreement was made and prior to closing. Because the Court has granted summary judgment in favor of Defendants on Plaintiffs' federal discrimination claim, the Court declines to exercise supplemental jurisdiction over their state law claim. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if the district

10

court has dismissed all claims over which it had original jurisdiction); *Thomas v. Dickel,* 213 F.3d 1023, 1026 (8th Cir. 2000); *Franklin v. Zain,* 152 F.3d 783, 786 (8th Cir. 1998).

Thus, Count II is dismissed without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 31) is **granted** as to Count I.  A separate Judgment in favor of Defendants will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Count II is dismissed without prejudice.

Dated this 5th day of September, 2024.

   /s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE